—FOR REPORTER PUBLICATION—

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**JIANGSU HONGYUAN
PHARMACEUTICAL CO., LTD.,**
**Plaintiff,**

**v.**

**Case No. 15-22306-CIV-GAYLES**

**DI GLOBAL LOGISTICS INC.,**
**Defendant.**

_____ /

## ORDER

**THIS CAUSE** comes before the Court on Defendant DI Global Logistics, Inc.'s ("DI Global") Motion to Dismiss Plaintiff's First Amended Complaint [ECF No. 14]. This case concerns the scope and effect of a forum selection clause designating China, contained in a contract between a Florida corporation and a Chinese company (drafted by the Chinese company), on a *forum non conveniens* analysis. The Plaintiff, Jiangu Hongyuan Pharmaceutical Co., Ltd. ("Hongyuan"), has brought both contractual and noncontractual claims against DI Global, alleging that DI Global has failed to remit payment for shipments of chemical products. DI Global has moved to dismiss the action, *inter alia*, under the doctrine of *forum non conveniens*, arguing that the forum selection clause mandates that this dispute be resolved in China.

The Court has reviewed the pleadings, the briefs, the record, and the applicable law, and has considered the arguments advanced by counsel at two different hearings on the motion. For the reasons that follow, the motion to dismiss shall be granted.[1]

---

[1]   DI Global argues in the alternative that the Amended Complaint be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Because the Court finds that the *forum non conveniens* issue is dispositive, it will not consider the parties' Rule 12(b)(6) arguments.

## I.     BACKGROUND

Plaintiff Hongyuan is a company registered to do business in China. Am. Compl. ¶ 2. Defendant DI Global is a Florida corporation. *Id.* ¶ 3. In or around April or May 2013, Hongyuan and DI Global executed an Agency Agreement (the "Agreement"), originally drafted by Hongyuan, through which Hongyuan—for a term of five years—granted DI Global exclusive rights to sell its chemical products in a territory designated as Colombia, Trinidad & Tobago, Brazil, Venezuela, and the United States. Def.'s Mot. Ex. B ¶¶ 1, 10. The Agreement also granted DI Global "all exclusive rights and power of attorney to connect, communicate, negotiate and finalize import and distribution contracts with all private and public establishments" in the prescribed territory. *Id.* Hongyuan agreed not to sell its products directly to any customers in that territory or indirectly through any brokers or resellers inside or outside the territory. *Id.* ¶ 2. Hongyuan also granted DI Global the right to sell its products to customers outside the territory who buy those products for use in production of a finished product that is marketed and sold inside the territory. *Id.* ¶ 3.

According to the Amended Complaint, DI Global requested that Hongyuan ship certain chemical products to it. Am. Compl. ¶ 5. Hongyuan alleges that, pursuant to that request, it remitted "Invoice Number 72" for the shipment of Titanium Dioxide Anatase 3100, seeking payment in the amount of $210,000.00. *Id.* ¶ 6. DI Global allegedly accepted the invoice but did not pay it in full. *Id.* ¶¶ 7-8. Hongyuan states that it has repeatedly demanded payment from DI Global, but that DI Global has refused to pay the amount due and has "default[ed] under the terms of the sales purchase agreement." *Id.* ¶ 14.

On June 26, 2015, former Plaintiff Jiangsu Hongyuan Pharmaceutical Corp. filed a three-count complaint against DI Global, alleging claims for breach of contract, account stated, and unjust enrichment. Because the former Plaintiff was incorporated in Florida, DI Global filed a motion to dismiss alleging, *inter alia*, that this Court lacked subject matter jurisdiction over this

case because the parties were not diverse. An Amended Complaint was filed on August 5, 2015, replacing Jiangsu Hongyuan Pharmaceutical Corp. with the current Plaintiff, Hongyuan.

DI Global filed a renewed motion to dismiss on August 17, 2015, pursuant to Federal Rules of Civil Procedure 12(b)(3), alleging improper venue, and 12(b)(6), alleging that the Amended Complaint fails to state a claim for which relief can be granted. In its reply, DI Global acknowledged that a Rule 12(b)(3) motion for improper venue was not the appropriate vehicle through which to move for dismissal and requested that the Court view its motion as a motion to dismiss under the doctrine of *forum non conveniens*. In support of the *forum non conveniens* argument, DI Global pointed to the text of Article 6 of the Agreement, titled "Governing Law," which provides:

> This agreement shall only be governed by Chinese law. In the event of any disputes between the parties the People's Court of Jiangsu (China) shall be empowered to take cognizance of it, unless coercive law prescribes another court.

Def.'s Mot. Ex. B ¶ 12. DI Global contends that this language constitutes a forum selection clause that mandates that this action be heard in China. Hongyuan made no argument in its opposition against DI Global's *forum non conveniens* allegation, other than that "there is no legal or contractual obligation forcing Plaintiff to sue in China." Pl.'s Opp'n at 6. After reviewing the pleadings, and following a telephonic hearing held on December 30, 2015, the Court ordered the parties to provide additional briefing on the *forum non conveniens* issue. *See* ECF No. 22. The Plaintiff filed its brief on January 12, 2016, and the Defendant filed its brief the next day. The Court held a second hearing on the motion on January 25, 2016.

## II.   LEGAL STANDARD

"Under the doctrine of *forum non conveniens*, a district court has the inherent power to decline to exercise jurisdiction even when venue is proper." *Vanderham v. Brookfield Asset Mgmt., Inc.*, 102 F. Supp. 3d 1315, 1318 (S.D. Fla. 2015) (citing *Gulf Oil Corp. v. Gilbert*, 330

U.S. 501, 506-07 (1947), *superseded by statute on other grounds as recognized in Am. Dredging Co. v. Miller*, 510 U.S. 443 (1994)). Although a court may consider matters outside the pleadings in ruling on a motion to dismiss based on *forum non conveniens*, it "must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Id.* (quoting *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004)) (internal quotation marks omitted). To obtain dismissal for *forum non conveniens*, the moving party must demonstrate that (1) the public and private factors weigh in favor of dismissal, (2) an adequate alternative forum is available, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *GDG Acquisitions, LLC v. Government of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014).

## III.  DISCUSSION

### A.  *Viability of the Forum Selection Clause*

DI Global, relying on the premise that the language in Article 6 of the Agreement constitutes a valid forum selection clause, argues that this case should be dismissed on *forum non conveniens* grounds. Before the Court can proceed to the *forum non conveniens* analysis, however, it must determine whether Article 6 contains a valid, enforceable, and mandatory forum selection clause, as well as whether that clause applies to the dispute in this case.

#### 1.  Validity and Enforceability

Forum selection clauses contained in international contracts are presumptively valid and enforceable. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). Under *Bremen*, forum selection clauses in international contracts will be found *un*enforceable "only when: (1) their formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement

of such provisions would contravene a strong public policy." *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1292 (11th Cir. 1998) (citing *Bremen*, 407 U.S. at 15-18).[2]

DI Global argues that the forum selection clause in Article 6 withstands all four *Bremen* exceptions. Given that "[f]or each category, the complaining party bears a heavy burden of demonstrating unreasonableness," *Davis v. Avvo, Inc.*, No. 10-2352, 2011 WL 4063282, at *2 (M.D. Fla. Sept. 13, 2011) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 592 (1991)), and that Hongyuan has advanced no argument on any category, the Court agrees. First, the Agreement was not induced by fraud or overreaching because it was drafted by Hongyuan. Second, Hongyuan will not be deprived of its day in court due to any alleged inconvenience or unfairness because Hongyuan drafted the Agreement and chose to include a clause designating China as the forum. Therefore, Hongyuan either foresaw or should have foreseen any inconvenience it would suffer by being forced to litigate in China at the time it elected to include Article 6 in the Agreement. Third, the chosen law will not deprive Hongyuan of a remedy, because Article 6 clearly states that the agreement shall be governed only by Chinese law, so "the remedy will be determined under the same set of rules no matter where the case is heard"—China or Florida. *Rucker v. Oasis Legal Fin., L.L.C.*, 632 F.3d 1231, 1237 (11th Cir. 2011). And fourth, enforcement of the forum selection clause would not contravene a strong public policy. DI Global has a legitimate interest in limiting the fora in which it can be sued, given the "international character" of the Agreement. *See Sun Trust Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1262 (S.D. Fla. 2001). In

---

[2]   The Agreement and underlying transactions here are "'truly' and 'fundamentally' international," and thus the *Bremen* analysis applies. *Liles v. Ginn-La W. End, Ltd.*, 631 F.3d 1242, 1246 (11th. Cir. 2011) (per curiam) (citation omitted). Hongyuan, the seller, is a Chinese company; DI Global, the buyer, is a Florida corporation whose president is a Venezuelan resident, *see* Def.'s Mot. Ex. C (Carlos N. Arenas Decl.); and, "perhaps most importantly," the subject matter of the Agreement concerns the sale of chemicals to third parties located in Colombia, Trinidad & Tobago, Brazil, Venezuela, and the United States, as well as the potential for sale to third parties in other countries not specifically listed. *See Liles*, 631 F.3d at 1246.

light of the realities of present-day commercial international trade, a "forum clause should control absent a strong showing that it should be set aside." *Bremen*, 407 U.S. at 13-14, 15.

Because the forum selection clause passes muster under all four categories of the *Bremen* analysis, the clause is both valid and enforceable.

### 2.     Mandatory or Permissive Character of the Forum Selection Clause

The Court must next determine whether the forum selection clause is mandatory. The Eleventh Circuit enforces "only those clauses that unambiguously designate the forum in which the parties must enforce their rights under the contract." *Fla. Polk Cnty. v. Prison Health Servs., Inc.*, 170 F.3d 1081, 1083 n.8 (11th Cir. 1999). A "permissive" forum selection clause "authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere. A mandatory clause, in contrast, 'dictates an exclusive forum for litigation under the contract.'" *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004) (quoting *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1262 n.24 (11th Cir. 1999)). "One hallmark of a mandatory clause is the use of the imperative term 'shall,' which prescribes a 'requirement.'" *Cornett v. Carrithers*, 465 F. App'x 841, 843 (11th Cir. 2012) (per curiam) (quoting *Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1330 (11th Cir. 2011)).

To review, the provision at issue states: "In the event of any disputes between the parties the People's Court of Jiangsu (China) **shall** be empowered to take cognizance of it, unless coercive law prescribes another court." Def.'s Mot. Ex. B ¶ 12 (emphasis added). Upon first glance, the use of the term "shall," under *Global Satellite* and *Cornett*, characterizes the clause as mandatory, not permissive. However, the Court would be remiss in not considering what effect, if any, the phrase at the end of the clause—"unless coercive law prescribes another court"—has on the clause's mandatory or permissive character as a whole. DI Global affords this phrase no argument whatsoever, while Hongyuan argues that the phrase is "utterly vague on its own terms" because

6

the Agreement does not define either "coercive law" or "another court." Pl.'s Supp. Br. at 6.

Further, Hongyuan contends that because the Agreement is "clearly subject to the limitations of

other 'coercive' courts[, i]t is far from an absolute bar on litigation in other jurisdictions." *Id.*[3]

The Seventh Circuit faced a somewhat analogous forum selection clause in *Frietsch v.

Refco, Inc.*, 56 F.3d 825 (7th Cir. 1995). There, the plaintiffs, citizens and residents of Germany,

brought a suit alleging federal securities fraud against the defendant, a U.S. commodities broker.

The defendant moved for dismissal under *forum non conveniens*, arguing for the enforceability

of a forum selection clause in the contract between the parties providing that the "place of juris-

diction . . . is the registered office of the trustee [in Germany], to the extent permissible under the

law." *Id.* at 827 (internal quotation marks omitted). The court first opined that "[t]he absence of

the indefinite article (the clause says 'place of jurisdiction' is Germany, not 'a place of jurisdiction'

is Germany) implies that there is only one place of jurisdiction." *Id.* at 829. The court then

reasoned that the phrase "to the extent permissible" "would have no function" if the forum

selection clause as a whole "were not mandatory—if, in other words, a party could sue anywhere

he wanted." *Id.* Furthermore:

> You would not need a clause to *permit* suit in the very place to which no one
> could object as the site of the suit [in this case, Germany]. But you would need the
> clause to *require* suit there if there were alternative possible sites. The obvious
> function of the clause is to rule out those alternative sites and require that the suit
> be brought in Germany, provided there is no legal obstacle to suing there.

*Id.* The court concluded that the forum selection clause was mandatory and could thus be enforced

to dismiss the case for *forum non conveniens*. *Id.*

Similarly in this instance, no clause would be needed to permit suit in China, the home of

the Plaintiff who was also the contract's drafter. If the clause did not exist, DI Global could still

reasonably expect that Hongyuan could bring suit against it in Hongyuan's home forum and,

---

[3]   The Court notes that neither party argues that any "coercive law" does, in fact, prescribe another court.

were the roles in this litigation reversed, Hongyuan could still reasonably expect that DI Global could bring a lawsuit against it in its home forum. The clause *is* needed, however, to *require* suit in China because alternative possible fora for suit exist. Hypothetically, were the roles reversed, DI Global could feasibly have attempted to bring suit against Hongyuan in Florida, where DI Global is incorporated, or perhaps in one of the several other countries in the contracted-for territory, depending on the potential cause of action and its underlying facts. But "[t]he obvious function of the clause," as drafted by Hongyuan, "is to rule out those alternative sites and require that the suit be brought" not just anywhere in China, but in an explicit, specific venue in Jiangsu Province, China. *Id.*; *see also K & V Sci. Co. v. Bayerische Motoren Werke AG*, 314 F.3d 494, 499 (10th Cir. 2002) ("[W]here venue is specified [in a forum selection clause] with mandatory or obligatory language, the clause will be enforced . . . ." (quoting *Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992) (internal quotation marks omitted))); *Mann v. Auto. Prot. Corp.*, 777 F. Supp. 2d 1234, 1242 (D.N.M. 2011) ("[T]he language specifying where any legal action regarding the Agreement shall be filed would be superfluous if it did not mean that venue was exclusive in those courts."). The phrase "unless coercive law prescribes another court" would have no function if Article 6 as a whole did not mandate that suit be brought in Jiangsu. Thus, the forum selection clause is mandatory.[4]

---

[4] Notably, the Court would reach the same result even if it adopted Hongyuan's proposed argument that the phrase "unless coercive law prescribes another court" renders the entire clause ambiguous. "Within the Eleventh Circuit . . . federal common law governs the construction of a forum-selection clause." *Vernon v. Stabach*, No. 13-62378, 2014 WL 1806861, at *4 (S.D. Fla. May 7, 2014). A district court, then, should interpret the clauses "by reference to ordinary contract principles." *Cornett*, 465 F. App'x at 842. Assuming, *arguendo*, that the forum selection clause *is* "subject to opposing, yet reasonable interpretation" regarding its mandatory or permissive character, these ordinary contract principles prefer "an interpretation . . . which operates more strongly *against the party from whom the words proceeded.*" *Zapata Marine Serv. v. O/Y Finnlines, Ltd.*, 571 F.2d 208, 209 (5th Cir. 1978) (emphasis added).

In other words, as the drafter of the allegedly ambiguous provision, the clause must be construed *against* Hongyuan and *in favor* of DI Global, which would mandate that this Court find the clause is a mandatory consent to jurisdiction and venue. *Cf. Citro Fla., Inc. v. Citravale, S.A.*, 760 F.2d 1231, 1232 (11th Cir. 1985).

### 3.    Applicability

Finally, the Court must determine whether the forum selection clause applies to the dispute at issue. Hongyuan urges the Court to adopt a limited view of the scope of the Agreement, based on the language at the beginning of Article 6 that provides: "This agreement shall only be governed by Chinese law." Hongyuan expresses in its Supplemental Brief that "[s]uch exclusionary language ('this' rather than 'all') contemplates the execution and existence of other agreements to be entered by the parties and NOT covered by Chinese law." Pl.'s Supp. Br. at 3. It argues that because the Agreement does not clearly state that "any and all transactions between" the parties are governed by the Agreement, the Agreement is, at best, ambiguous as to its application to "other disputes," including this dispute. *Id.* at 5. And because the Agreement does not specifically address the failure of DI Global to pay Hongyuan for purchase orders, Hongyuan contends that DI Global should not be permitted to pull its claims underneath the umbrella of the Agreement.[5]

Hongyuan's argument is foreclosed by the Eleventh Circuit's en banc decision, later affirmed by the Supreme Court, in *Stewart Organization, Inc. v. Ricoh Corp.*, 810 F.2d 1066 (11th Cir. 1987) ("*Stewart*") (en banc) (per curiam), *aff'd* 487 U.S. 22 (1988). There, the plaintiff (the Stewart Organization) had purchased, through one of its controlling shareholders (also named Stewart) a failing local copying business in Alabama. *See Stewart Org., Inc. v. Ricoh Corp.*, 779 F.2d 643, 644 (11th Cir.), *vacated*, 785 F.2d 896 (11th Cir. 1986) (per curiam). After turning the business from a failure into a modest success, Mr. Stewart entered into negotiations with the defendant Ricoh Corporation, a nationwide manufacturer of copy machines, to become a dealer for Ricoh in central Alabama. *Id.* The parties executed a "Dealer Sales Agreement" contract, which contained a choice of law clause and a forum selection clause stating that "this

---

[5]   Neither party has submitted any other agreement to the Court, nor have they represented that any other agreement exists. To the contrary, at the January 25th hearing, counsel for Hongyuan informed the Court that he is not aware of any other contracts or agreements executed by the parties.

Agreement, and all documents issued in connection therewith, shall be" governed by the laws of New York, with exclusive jurisdiction vesting in the state and federal courts of Manhattan. *Id.* at 645 n.2. The Stewart Organization filed an action against Ricoh in federal court in Alabama, alleging breach of contract, breach of warranty, fraud, and federal antitrust violations arising out of the dealer-manufacturer relationship between the parties. *Id.* at 645. In response to the complaint, Ricoh moved to transfer on grounds of improper venue and *forum non conveniens*, pointing to the choice of law and forum selection clauses in the contract. *Id.* The district court expressed concern that the forum selection clause was not sufficiently broad to require the transfer of all claims to a New York court, and that while it would be permissible to transfer the breach of contract claims to New York, the breach of warranty, fraud, and antitrust claims would have to remain in Alabama. *Stewart*, 810 F.2d at 1070. The Eleventh Circuit, sitting en banc, reversed. It reasoned that the district court's concerns were ill-founded because the language of the agreement was clear "that the forum selection clause encompassed any dispute arising out of or in connection with the dealer-manufacturer relationship." *Id.* Because the contract referred to "*any* 'case or controversy arising under or in connection with this Agreement,'" the forum selection clause thus included "all causes of action arising directly or indirectly from the business relationship evidenced by the contract." *Id.* (emphasis in original). As a result, the court held that the forum selection clause applied to the parties' dispute in all respects. *Id.* at 1071.

Although *Stewart*'s factual circumstances are different from those at issue here, its teachings are no less applicable. In this Circuit, post-*Stewart*, "[c]lauses referencing 'any lawsuit regarding this agreement' and 'any action brought by either party in any court' have been broadly construed to include contract claims 'arising directly or indirectly from' the contractual relationship, as well as tort and extra-contractual claims." *Pods, Inc. v. Paysource, Inc.*, No. 05-1764, 2006 WL 1382099, at *2 (M.D. Fla. May 19, 2006) (quoting *Digital Envoy, Inc. v. Google, Inc.*,

319 F. Supp. 2d 1377, 1380 (N.D. Ga. 2004); *Stephens v. Entre Computer Ctrs., Inc.*, 696 F.

Supp. 636, 638 (N.D. Ga. 1988)); *see also Louis Dreyfus Negoce S.A. v. Blystad Shipping &*

*Trading Inc.*, 252 F.3d 218, 225 (2d Cir. 2001) (interpreting broadly a clause that stated "any

dispute arising from the making, performance or termination of this [Agreement]"). Hongyuan

attempts to contrast what it characterizes as two separate types of disputes: in one category,

disputes regarding the "strict[,] one-way agreement of representation that provides assurance to

[DI Global] that [it] will not sell to third parties in the United States without compensation to or

payment of commissions to Defendant" (in other words, claims that allege breach of specific

terms of the Agreement), which *would* be subject to the forum selection clause; and in the other

category, all other disputes, which would not. *See* Pl.'s Supp. Br. at 5.

      The forum selection clause is not limited, as Hongyuan suggests, to the former type of

dispute.[6] It is "clear from the language of the agreement that the forum selection clause encom-

passe[s] any dispute arising out of or in connection with" the distributor-manufacturer relationship.

*Stewart*, 810 F.2d at 1070. The Agreement (and, according to the parties, no other agreement)

governs the entire relationship between Hongyuan, the manufacturer, and DI Global, its distributor,

providing for the sales territory, sales within and without that territory, sales targets, and com-

missions. *See* Def.'s Mot. Ex. B. And the forum selection clause in that Agreement could not be

worded much more broadly than it is: "In the event of *any* disputes between the parties . . . ."

Def.'s Mot. Ex. B ¶ 12 (emphasis added); *see also Cableview Commc'ns of Jacksonville, Inc. v.*

*Time Warner Cable Se. LLC*, No. 13-0306, 2015 WL 1268584, at *22 (M.D. Fla. Mar. 27, 2014)

("The use of the words 'any dispute' suggests that the forum selection clause applies to all dis-

putes between the parties."). Therefore, because the Agreement references any disputes between

---

[6]  In fact, under the plainest reading of the provision, the "[t]his agreement" language modifies, if anything, the choice-of-law provision in the first sentence of Article 6, not the forum selection clause in the second sentence.

the parties, the Court construes the forum selection clause broadly to encompass "all causes of action arising directly or indirectly from the business relationship evidenced by the contract," *Stewart*, 810 F.2d at 1070, including Hongyuan's claims alleging breach of contract and its non-contractual claims alleging that DI Global was unjustly enriched. *See Stiles v. Bankers Healthcare Grp., Inc.*, — F. App'x —, 2016 WL 308705, at *4 (11th Cir. Jan. 26, 2016) (per curiam) (citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983) (finding that tort claims are covered by forum selection clauses when the claims "ultimately depend on the existence of a contractual relationship" between the parties), *overruled on other grounds by Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495 (1989)). Such a conclusion "is consistent with the Supreme Court's directive in *The Bremen* to encourage commercial reliance on forum selection clauses and thus keep intact the usefulness of these agreements." *Stewart*, 810 F.2d at 1070.

**B.    Forum Non Conveniens *Analysis***

The existence of a valid, enforceable, mandatory, and applicable forum selection clause—like the clause contained in the Agreement—is not alone dispositive in the *forum non conveniens* analysis. In *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 571 U.S. —, 134 S. Ct. 568 (2013), the Supreme Court explained that a viable forum selection clause carries *near*-determinative weight: "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 582; *see also GDG Acquisitions*, 749 F.3d at 1028. Following *Atlantic Marine*, this Court must "adjust [its] usual *forum non conveniens* analysis in three ways":

> First, "the plaintiff's choice of forum merits no weight." Second, the district court "should not consider arguments about the parties['] private interests" because when a plaintiff agrees to a forum-selection clause, the plaintiff waives the right to challenge the pre-selected forum as inconvenient. Third, when a party bound by

> a forum-selection clause files suit in a different forum than the one pre-selected, the plaintiff's chosen venue's choice-of-law rules will not apply.

*Vanderham*, 102 F. Supp. 3d at 1318-19 (quoting *Atlantic Marine*, 134 S. Ct. at 581-82). Post–*Atlantic Marine*, the Eleventh Circuit has ruled that "[a] binding forum-selection clause requires the court to find that the *forum non conveniens* **private factors** entirely favor the selected forum." *GDG Acquisitions*, 749 F.3d at 1029 (emphasis added).[7] What remains to be determined under this modified analysis prior to any consideration of dismissal, then, is (1) whether the public interest factors weigh in favor of dismissal, (2) whether an adequate alternative forum is available, and (3) whether the Plaintiff can reinstate its suit in the alternative forum without undue inconvenience or prejudice. *Id.* at 1028.

### 1.    Public Interest Factors

The relevant public interests include "the familiarity of the court(s) with the governing law, the interest of any foreign nation in having the dispute litigated in its own courts, and the value of having local controversies litigated locally." *Pierre-Louis v. Newvac Corp.*, 584 F.3d 1052, 1056 (11th Cir. 2009) (quoting *Liquidation Comm'n of Banco Intercont'l, S.A. v. Renta*, 530 F.3d 1339, 1356-57 (11th Cir. 2008)) (internal quotation marks omitted). The *Atlantic Marine* Court opined that "[b]ecause [these] factors will rarely defeat a transfer motion, the practical result" of a court's finding that a viable forum selection clause exists is that the clause "should control except in unusual cases." 134 S. Ct. at 582. "In all but the most unusual cases," the Court continued, "the interest of justice is served by holding parties to their bargain." *Id.* at 583.

The public interests all weigh in favor of dismissal here. First, according to Article 6, this dispute is governed by Chinese law, with which Chinese courts are infinitely more familiar than

---

[7]   The "private factors" include "'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Atlantic Marine*, 134 S. Ct. at 581 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981).

this Court. Next, China has a stronger interest in having this dispute litigated in its courts, as the parties contracted to litigate in China, and China doubtlessly wants its citizens to be empowered to seek redress in its courts when they contract to have their claims heard there. And finally, the aggrieved party is a Chinese entity, and "[t]here is 'a local interest in having localized controversies decided at home.'" *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 260 (1981) (quoting *Gilbert*, 330 U.S. at 509).

Hongyuan's arguments on this point—(1) that DI Global has not demonstrated that the public interest factors strongly favor a Chinese forum because it has not provided data regarding the congestion of Chinese and U.S. Courts, (2) that it has not demonstrated China has a greater interest in the dispute than the United States, and (3) that the application of Chinese law to this dispute does not overcome the deference its own chosen forum, *see* Pl.'s Supp. Br. at 7-8—are unavailing. On the first two points, Hongyuan inappropriately foists onto DI Global a burden it is not subject to. "[A]s the party defying the forum-selection clause," it is "the *plaintiff* [who] bears the burden of establishing that transfer to the forum for which the parties bargained for is unwarranted" and "showing why the court should not transfer the case to the forum to which the parties agreed." *Atlantic Marine*, 134 S. Ct. at 581-82 (emphasis added). Hongyuan cannot argue based on a lack of evidence from DI Global that the public interest factors weigh against transfer. And on the third point, under *Atlantic Marine*, a finding of a valid and enforceable forum selection clause vitiates any deference owed a plaintiff's choice of forum. *Id.* at 581.[8] In sum, there is no indication this is one of the "unusual cases" in which the public factors outweigh a valid forum selection clause.

---

[8]   Even prior to *Atlantic Marine*, the Supreme Court in *Piper Aircraft* ruled that foreign plaintiffs (like Hongyuan) are entitled to less deference in their choice of forum. *See Piper Aircraft*, 454 U.S. at 255-56.

### 2.        Adequacy and Availability of the Alternative Forum

The next factor in the *forum non conveniens* analysis involves two inquiries, each of which "warrant[s] separate consideration," *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001): whether the alternative forum is "adequate" and whether the alternative forum is "available," *Aldana v. Del Monte Fresh Produce N.A.*, 578 F.3d 1283, 1290 (11th Cir. 2009).

#### a.        *Adequacy*

"An alternative forum is adequate if it provides for litigation of the subject matter of the dispute and potentially offers redress for plaintiffs' injuries." *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1382 (11th Cir. 2009). "An adequate forum need not be a perfect forum." *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001). Courts need ask "only whether some remedy exists; whether the remedy afforded is less favorable in the foreign forum is not determinative." *Neuralstem, Inc. v. ReNeuron, Ltd.*, 365 F. App'x 770, 771 (9th Cir. 2010) (per curiam). The adequacy of the forum also "does not depend on the existence of the identical cause of action in the other forum." *Norex Petrol. Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 158 (2d Cir. 2005). On the other hand, an alternative forum is *in*adequate "if the remedy provided by th[at] alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft*, 454 U.S. at 252; *see also Aldana*, 578 F.2d at 1290 (stating that only in "rare circumstances" will "the remedy offered by the forum [be] clearly unsatisfactory" such that the forum would be considered inadequate).[9]

---

[9]     At the outset, the Court acknowledges that the United States Supreme Court and several lower federal courts have found, in many types of cases (including breach of contract cases), that China is an adequate alternative forum. *See, e.g.*, *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 435 (2007) (dismissing a fraudulent misrepresentation case on *forum non conveniens* grounds in favor of trial in China where the plaintiff was a California corporation); *Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 249-50 (4th Cir. 2011) (finding that China was an adequate forum in a products liability action); *Warner Tech. & Inv. Corp. v. Hou*, No. 13-7415, 2014 WL 7409978, at *3-4 (D.N.J. Dec. 31, 2014) (finding that China was an adequate forum in an action for breach of contract and related fraud); *S. Megga Telecomms Ltd. v. Lucent Techs., Inc.*, No. 96-0357, 1997 WL 86413, at *11 (D. Del. Feb. 14, 1997) (dismissing U.S. corporate defendant's counterclaims against Hong Kong corporate plaintiff for breach of contract and other violations because China provided an adequate alternative forum).

Hongyuan argues that DI Global bears the burden to demonstrate that China is an adequate forum in this case. According to Hongyuan, DI Global failed to meet that burden by failing to provide the Court with a sworn affidavit of an individual familiar with Chinese law or provide proof of (1) the availability of a comparative cause of action for Hongyuan's claim, (2) the accessibility of Chinese courts to disputes involving American defendants, or (3) whether the statute of limitations in China bars Hongyuan's claim. Hongyuan asserts that, without such proof, the Court must find DI Global has not proven adequacy and its *forum non conveniens* motion must be denied.

But Hongyuan's is only a partially correct view of the law. In this Circuit, an alternative forum is "presumed 'adequate' unless the plaintiff makes some showing to the contrary," through, for example, "'substantiated . . . allegations of serious corruption or delay.'" *J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co.*, 515 F. Supp. 2d 1258 (M.D. Fla. 2007) (quoting *Leon*, 251 F.3d at 1312). *Leon* is clear that while defendants do have the "ultimate burden of persuasion" to establish adequacy, they bear this burden *only* where the plaintiff *substantiates* its allegations of corruption or delay. *See* 251 F.3d at 1312 (stating that if the plaintiff proffers "*significant* evidence documenting the partiality or delay (in years) typically associated with the adjudication of similar claims, and these conditions are so severe as to call the adequacy of the forum into doubt, then the defendant has the burden to persuade the [court] that the facts are otherwise," but where a plaintiff's allegations are insubstantially supported, the district court is "free to reject them without considering any evidence from the defendants" (emphasis added)). The *Leon* court believed that this approach "forbids dismissal to alternative forums that realistically are not capable of producing a remedy for the plaintiff's injuries, without crediting cursory attacks on legal systems simply because they are somewhat slower or less elaborate than ours." *Id.* at 1313. Therefore, the Court must decide whether Hongyuan has proffered significant evidence of partiality, corruption,

or delay before deciding whether DI Global has any burden to establish adequacy at all and, if it does, whether it has met that burden.

Hongyuan asserts that scholarly articles have noted the Chinese legal system's "potential for excessive trial delays, obstructive legal counsel, corruption, lack of legal safeguards, [and] undue influence by political leadership" and cites a single law review article that discusses China's purported suitability, or lack thereof, as an alternative forum in *forum non conveniens* cases. Pl.'s Supp. Br. at 11. However, "[a]bsent a showing of inadequacy by a plaintiff, 'considerations of comity preclude a court from adversely judging the quality of a foreign justice system.'" *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009) (quoting *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 73 (2d Cir. 1998)). The great weight of authority holds that "generalized, anecdotal complaints of corruption are not enough for a federal court to declare that [a nation's] legal system is so corrupt that it can't serve as an adequate forum." *Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enter. Fund*, 589 F.3d 417, 421-22 (7th Cir. 2009); *see also Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1179 (9th Cir. 2006) (finding that the plaintiff's "anecdotal evidence of corruption and delay" in courts in the Philippines was insufficient to show inadequacy); *In re Arb. Between Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukr.*, 311 F.3d 488, 489 (2d Cir. 2002) (refusing "to pass value judgments on the adequacy of justice and the integrity of Ukraine's judicial system on the basis of no more than . . . bare denunciations and sweeping generalizations"); *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 678 (D.C. Cir. 1996) (ruling that the plaintiff's general allegations of the lack of impartiality in Jordanian courts was insufficient to render the forum inadequate), *abrogated on other grounds by Samantar v. Yousuf*, 560 U.S. 305 (2010); *Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1351 (1st Cir. 1992) (holding that Turkish courts were adequate despite the plaintiff's unsubstantiated complaints of bias against foreign litigants and women). *Cf. Bhatnagar v. Surrenda Overseas Ltd.*, 52 F.3d 1220, 1228 (3d

Cir. 1995) (finding that a delay of at least eighteen to twenty-six years in Indian courts, supported by evidence that included a quote from the former Chief Justice of India saying that the Indian legal system is "almost on the verge of collapse," rendered the remedy there "clearly inadequate").

A district court in California rejected arguments like Hongyuan's in *CYBERsitter, LLC v. People's Republic of China*, No. 10-0038, 2010 WL 4909958 (C.D. Cal. Nov. 18, 2010). There, the plaintiff proffered a declaration from a law professor in support of its opposition to the defendant's *forum non conveniens* motion seeking dismissal in favor of a Chinese forum. The professor argued that the Chinese government could easily control the outcome of a judicial proceeding, meaningful judicial independence does not exist in China, and political authorities could interfere in any lawsuit in which they took an interest. *Id.* at *4. The court, however, concluded that those allegations were too "speculative" to convince it that China would not provide an adequate forum. *Id.* at *5. This Court sees neither need nor justification to find otherwise here, as Hongyuan's generalized, anecdotal, and unsubstantiated allegations are similarly speculative.

Hongyuan also argues that China is not an adequate forum because the Chinese courts would not provide a "practical remedy." It contends that because DI Global does not own property or attachable assets in China, a judgment against DI Global would cause Hongyuan "extreme difficulty in collecting a damages award." Pl.'s Supp. Br. at 11. The Court reminds Hongyuan that it establishes the inadequacy of the foreign forum based on inadequacy of that forum's remedy only by showing that the remedy the forum provides is, in actuality, "no remedy at all," *Piper Aircraft*, 454 U.S. at 252, not that the remedy is "impractical" or "difficult." And while recognition of a foreign forum's adequacy does not require the Court to "conduct[] complex exercises in comparative law," even a cursory consultation of Chinese law resolves any doubt that the remedy it provides is a far cry from "no remedy at all." *Id.* at 251-52. Specifically, the Contract Law of the People's Republic of China both recognizes claims for breach of contract and provides for

damages. *See* He Tong Fa (合同法) [Contract Law] (promulgated by the Nat'l People's Cong., Mar. 15, 1999, effective, Oct. 1, 1999), ch. VII, arts. 107–22 (China), *translated at* http://www.npc.gov.cn/englishnpc/Law/2007-12/11/content_1383564.htm.   And the General Principles of the Civil Law of the People's Republic of China recognizes a claim for unjust enrichment. *See* Zhonghua Renmin Gongheguo Minfa Tongze (中华人民共和国民法通则) [General Principles of the Civil Law] (promulgated by the Nat'l People's Cong., Apr. 12, 1986, effective, Jan. 1, 1987; amended Aug. 27, 2009), ch. V, § 2, art. 92 (China), *translated at* http://www.npc.gov.cn/englishnpc/Law/2007-12/12/content_1383941.htm.[10] At bottom, "[t]his case presents a straightforward contractual dispute with similarly uncomplicated ancillary [noncontractual] claims that a Chinese court can adequately manage." *Huang v. Advanced Battery Techs., Inc.*, No. 09-8297, 2010 WL 2143669, at *5 (S.D.N.Y. May 26, 2010).

Based on its own review of the relevant provisions of Chinese law, the Court is sufficiently satisfied that some remedy for the causes of action alleged here exists in China. Whether this remedy is "practical" or whether Hongyuan may be inconvenienced trying to enforce a judgment does not bear on the Court's analysis.[11] Because China provides for litigation of the subject matter of this dispute and potentially offers redress for Hongyuan's injuries, *see King*, 562 F.3d at 1382, and because Hongyuan has not substantiated its allegations of corruption or delay in the Chinese legal system, this Court finds that China is an adequate alternative forum.

---

[10] Considering these provisions, it is worth revisiting Hongyuan's contention that the forum selection clause should be interpreted such that only a narrow category of disputes must be resolved by Chinese courts. *See supra* subsection III.A.3. If Hongyuan believes that the Chinese courts could adequately resolve *those* contractual claims, alleging breach of the specific terms of the Agreement, it stands to reason that the same courts could just as adequately resolve *these* contractual claims, alleging breach arising from sales made pursuant to that Agreement.

[11] The Court is hard-pressed to see how Hongyuan would have, as it contends, "extreme difficulty collecting a damages award" should they prevail against DI Global, a Florida corporation, when Florida's Uniform Out-of-Country Foreign Money-Judgment Recognition Act exists to govern that exact factual scenario. *See* Fla. Stat. § 55.601–.607.

### b.   *Availability*

An alternative forum is "available" to a plaintiff "when the foreign court can assert juris-diction over the litigation sought to be transferred." *Leon*, 251 F.3d at 1311. This requirement will ordinarily be satisfied "when the defendant is 'amenable to process' in the other jurisdiction." *Piper Aircraft*, 454 U.S. at 254 n.22. Whether China is an available alternative forum is a simple inquiry in this instance, as "[a]n agreement by the defendant to submit to the jurisdiction of the foreign forum typically satisfies the availability requirement." *Tang v. Synutra Int'l, Inc.*, No. 09-0088, 2010 WL 1375373, at *5 (D. Md. Mar. 29, 2010), *aff'd*, 656 F.3d 242; *accord Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1429 (11th Cir. 1996) ("[T]he defendants agreed to submit to the jurisdiction of an alternative forum (in France), rendering that forum available.").

DI Global, through its counsel, agreed to submit to China's jurisdiction and accept service of process on three separate occasions: in the telephonic conference held on December 30, 2015; in its Supplemental Brief; and at the hearing held on January 25, 2016. Hongyuan "does not dispute that the case can be filed in China and thus [China] is an 'available' alternative forum." Pl.'s Supp. Br. at 10. The Court therefore concludes that the availability requirement is satisfied.

### 3.   **Undue Inconvenience or Prejudice**

Turning to the final *forum non conveniens* requirement, the Court finds that Hongyuan can reinstate its claim in China without undue inconvenience or prejudice. *See GDG Acquisitions*, 749 F.3d at 1028. The burden to satisfy this requirement is not onerous. *See, e.g.*, *Seguros Universales, S.A. v. Microsoft Corp.*, 32 F. Supp. 3d 1242, 1252 (S.D. Fla. 2014). Hongyuan admits that the cost to refiling suit in China is insignificant, *see* Pl.'s Supp. Br. at 11, and the Court has already addressed and rejected its arguments regarding alleged delays and corruption in the Chinese legal system. Hongyuan's remaining contention on this issue—that "it is certain that Plaintiff would incur substantial delay to seeking a resolution of this dispute," *id.* at 12—is wholly

unsupported. And finally, as discussed above, DI Global has agreed to submit to jurisdiction in China and accept service of process from its courts—an agreement which, standing alone, is oftentimes sufficient to support dismissal. *See Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1335 (11th Cir. 2011) (affirming district court's dismissal of underlying complaints on *forum non conveniens* grounds where the defendants' stipulation to allow the plaintiffs to refile "remove[d] any impediment to reinstatement").

\* \* \*

Accordingly, because the parties' contractual forum selection clause is valid and governs all claims asserted by Hongyuan here, and because all other prerequisites to obtaining a dismissal for *forum non conveniens* have been satisfied, the Court concludes that DI Global's motion to dismiss must be granted. This dismissal, however, is conditioned on DI Global agreeing to proceed with the action in China. *See A/S Dan-Bunkering Ltd. v. M/V Centrans Demeter*, — F. App'x —, 2015 WL 8540968, at \*2 (11th Cir. Dec. 11, 2015) (per curiam) (providing that, "[t]o avoid prejudice to [a plaintiff], the district court can attach conditions to a dismissal to which the defendants must submit" in a *forum non conveniens* case).

## IV.    CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that:

(1)    the Defendant's motion to dismiss [ECF No. 14] is **GRANTED**, conditioned on the Defendant's agreement, as stated in its Supplemental Brief, to submit itself to the jurisdiction of China and to accept service of process from the courts of China;

(2)    the Amended Complaint [ECF No. 8] is **DISMISSED WITHOUT PREJUDICE** in favor of the People's Court of Jiangsu, China;

(3)    this case may be reinstated in the event that jurisdiction to entertain such a case is rejected by a final decision of a court in China; and

(4)      this case shall be **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 5th day of February, 2015.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE